UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONAL ESTUARDO GUTIERREZ RAMOS<br>Petitioner,<br><br>v.<br><br>Department of Homeland Security, et al.<br>Respondents. | Civil Action No. 1:25-cv-11915-MJJ |

### RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS' PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

Respondents by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this Opposition to the Petition for Writ of Habeas Corpus filed by Sobeyda Linda Castellanos Lopez as next of friend of Ronal Estuardo Gutierrez-Ramos.

Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases and this Court's Order Concerning Service and Stay of Transfer or Removal.[1]  Doc. No. 4.

### INTRODUCTION

Even if next of friend Petitioner Lopez could establish standing to pursue this Petition,[2]

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

[2] The Supreme Court has explained that next friend standing "is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Whitmore v. Arkansas*, 495 U.S. 149, 163, 110 S. Ct. 1717, 1727, 109 L. Ed. 2d 135 (1990).  Instead, to establish next friend standing, the next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.*   Additionally, the next friend "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate" and the next friend "must have some significant relationship with the real party in interest." *Id.* at 164.

this Petition must be denied and dismissed for multiple reasons.

Petitioner Gutierrez-Ramos is subject to a final order of removal and is currently detained in Louisiana by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1231(a) to effectuate such order.  *See* Declaration of Assistant Field Office Director, Keith Chan ¶¶ 9, 12, attached as Exhibit A.   Under binding precedent from the Supreme Court and the U.S. Court of Appeals for the First Circuit, this Court lacks habeas jurisdiction over this Petition because Petitioner was not in the District of Massachusetts when he filed this action on July 7 as he had been transferred to Louisiana on July 6.  *Id.*, ¶ 12.

Denial of this Petition, rather than transferring to the U.S. District Court for the Western District of Louisiana, is appropriate as the Petition is subject to dismissal on several additional bases.  Specifically, Petitioner Gutierrez-Ramos' detention is lawful under Section 1231(a), district courts lack jurisdiction to enter the requested relief—a stay of removal, and finally because Petitioner Gutierrez-Ramos is subject to an automatic stay of removal on account of his filing of a motion to reopen his *in absentia* removal order and thus has received the relief he requests in the Petition.  *See* 8 U.S.C. § 1229a(b)(5)(C).

For these reasons, this Petition should be denied.

---

The next friend bears the burden "to establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.*  Here, Petitioner Lopez fails to meet either prong of the Supreme Court's test for next friend standing, and this Petition is therefore subject to dismissal on this basis alone.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is native and citizen of Guatemala. Exh. A, ¶ 5. Petitioner entered the United States without inspection in 2019 and was issued a Notice to Appear ("NTA") in removal proceedings. *Id.*, ¶¶ 6-7. Petitioner was ordered removed *in absentia* by an Immigration Judge ("IJ") on March 19, 2024 after failing to appear at his scheduled removal proceeding. *Id.*, ¶ 8. On or about June 9, 2025, ICE received a call from the U.S. Coast Guard ("USGC") reporting that USGC encountered Petitioner and had detained him pursuant to its statutory authority under 14 U.S.C § 522(a). *Id.*, ¶ 9. Thereafter, ICE arrested and detained Petitioner pursuant to its authority under 8 U.S.C. 1231(a). *Id.* On June 10, 2025, Petitioner was booked and detained at Plymouth County Correctional Facility in Plymouth, Massachusetts. *Id.*, ¶ 10. On June 23, Petitioner filed a motion to reopen his removal proceedings with the Omaha Immigration Court – such motion remains pending. *Id.*, ¶ 11. On July 6, Petitioner was transferred to Jackson Parish Correctional Center in Jonesboro, Louisiana. *Id.*, ¶ 12.

On July 7, Petitioner Lopez filed this Petition with the Court as next of friend. Doc. No. 7. The Petition raises a claim that Petitioner's detention violates due process and asks this Court to "grant a stay of transfer and removal pending consideration of the Motion to Reopen petition filed in the Omaha, Nebraska Immigration Court." *Id.* at REQUEST FOR RELIEF.

## STATUTORY AND REGULATORY PROVISIONS AT ISSUE

Congress has provided a statutory process to allow aliens to file applications for relief from removal in immigration courts and then seek review of such decisions before the Board of Immigration Appeals ("BIA"), subject to judicial review by courts of appeals. Removal proceedings are initiated with the issuance of a NTA with the Immigration Court that has jurisdiction over the location of the individual. *See* 8 U.S.C. § 1229; 8 C.F.R. § 1003.14(a)

("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court" by ICE.). Once an NTA is filed with the Immigration Court, the IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Such proceeding "shall be the sole and exclusive procedure for determining whether an alien may be ... removed from the United States." *Id.* § 1229a(a)(3).

An alien has further administrative avenues for review and to challenge removal orders—including motions to reopen and motions to reconsider. *See generally* 8 U.S.C. § 1229a(c)(6)-(7); 8 C.F.R. §§ 1003.2, 1003.23. A motion to reopen seeks to reopen proceedings so that new evidence can be presented at an evidentiary hearing and for a new decision to be entered on a different factual record. *See Matter of L-O-G-,* 21 I. & N. Dec. 413, 418–19 (BIA 1996) (en banc). The filing of a motion to reopen stays execution of a removal order if the removal order was entered *in absentia* pending disposition of the motion by the IJ. *See* 8 U.S.C. § 1229a(b)(5)(C).

The statutory scheme restricts the availability and scope of judicial review of removal orders by expressly precluding habeas corpus jurisdiction and channeling review of such orders to the courts of appeals as "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute provides that review of all questions "of law and fact ... arising from any action taken or proceeding brought to remove an alien" shall be available only through a PFR in the appropriate court of appeals. *Id.* § 1252(b)(9).

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil*

4

*Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).  Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948) ("The burden of proof is on the petitioner to establish denial of his constitutional rights. The court must be convinced by a preponderance of evidence.").

## ARGUMENT

Pursuant to the immediate custodian and district of confinement rules set forth by the Supreme Court, this Court lacks habeas jurisdiction over this Petition because Petitioner was not detained in Massachusetts when he filed this action on July 7.  Denial and dismissal of this Petition, rather than transfer to the U.S. District Court for the Western District of Louisiana, is appropriate because the Petition suffers numerous other defects and therefore the interest of justice does not counsel transfer.

A. **The Immediate Custodian and District of Confinement Rules Apply to this Petition and Render this Court without Jurisdiction.**

Petitioner filed the Petition pursuant to 28 U.S.C. § 2241 which provides in relevant part that "[w]rits of habeas corpus may be granted by … the district courts within their respective jurisdictions" where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  A writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained."  28 U.S.C. § 2243.  A

district court therefore must have jurisdiction over the custodian because the "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Vasquez v. Reno*, 233 F.3d 688, 690 (1st Cir. 2000) (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494-95 (1973)).  As explained by another session of this Court recently, "as a general rule, a petitioner must file a habeas petition in the district in which they are confined and must name as a respondent the petitioner's immediate custodian." *See Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *4 (D. Mass. Apr. 4, 2025).

The Supreme Court explained that when considering "challenges to present physical confinement … the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 339 (2004).  *Padilla* involved a habeas petition filed by a U.S. citizen who was initially detained in the Southern District of New York but then transferred to South Carolina. *Id.* at 431.  After Mr. Padilla was transferred, he filed a petition in SDNY, naming President Bush and Secretary Rumsfeld as respondents.  *Id.* at 432.  The Court confronted the "question whether the Southern District has jurisdiction over Padilla's habeas petition" which required two determinations: "First, who is the proper respondent to the petition? And second, does the Southern District have jurisdiction over him or her?" *Id.* at 434.

Answering the first question, the Supreme Court explained that the habeas statute "provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Id.* (quoting 22 U.S.C. § 2242).  The Court stated that "there is generally only one proper respondent to a given prisoner's habeas petition," the immediate custodian who has "the ability to produce the prisoner's body before the habeas court." *Id.*  The Court applied its

6

"longstanding" rules – known as the "district of confinement" and "immediate custodian" rules – and explained that in a challenge to present physical confinement, "the proper respondent is the warden of the facility where the prisoner is held, not the Attorney General or some other remote supervisory official." *Id.* at 435.  Without evidence that "there was any attempt to manipulate" his transfer or that government was hiding his location, the Court explained that his "detention is thus not unique in any way that would provide arguable basis for a departure from the immediate custodian rule." *Id.* at 441-42.

As to the question of the proper district court to consider the petition, the Court affirmed the applicability of the traditional rule "that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443.  Because Mr. Padilla was moved from the Southern District of New York before the petition was filed, "the Southern District never acquired jurisdiction over Padilla's petition.". *Id.* at 441-42.[3]

Four years prior to the *Padilla* decision, the First Circuit in *Vasquez* held that a habeas petitioner challenging his immigration detention must file his petition in the district of confinement and must name his immediate custodian in that district as the respondent. *Vasquez*, 233 F.3d at 696.  The First Circuit rejected the argument that a supervisory official such as the Attorney General was the proper respondent, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent

---

[3] As such, the *Padilla* Court distinguished the factual circumstances before the Court from those at issue in *Ex parte Endo,* 323 U.S. 283 (1944) where the Supreme Court had created an exception to its general rule for cases in which the petitioner properly filed the habeas petition against the immediate custodian and thereafter was transferred outside the district court's territorial jurisdiction.  Here, as in *Padilla*, *Endo* is not applicable because Petitioner never properly filed his habeas petition with this Court because he was not detained in Massachusetts when it was filed.

7

to a habeas petition."[4] *Id.* at 689.

In *Vasquez*, an alien was detained in Massachusetts before transfer to Louisiana. *Id.* at 690. The petitioner filed in the District of Massachusetts, naming as respondents the Attorney General, the Commissioner of the Immigration and Nationality Service ("INS"), and the district director of the INS's Boston office. *Id.* He did not name, however, the INS official who maintained his custody in Louisiana. *Id.* The First Circuit held that the district court erred in exercising jurisdiction because the petitioner was not detained in Massachusetts when he filed and due "to the petitioner's failure to name his true custodian (the INS district director for Louisiana) as the respondent to his petition." *Id.*

The First Circuit explained that "Congress has stipulated that a writ of habeas corpus granted by a district court 'shall be directed to the person having custody of the person detained.'" *Id.* (quoting 28 U.S.C. § 2243). Per the Court, "[t]his means, of course, that the court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody." *Id.* at 690. As it specifically concerned aliens in immigration detention, the Court found that, as in in the prison context, the proper respondent is not a supervisory official such as the Attorney General or the head of an agency, but the immediate custodian of the alien, *i.e.* the individual "who holds the petitioner in custody." *Id*. at 691. As such, the First Circuit held that "an alien who seeks a writ of habeas corpus contesting the legality of his detention by [ICE] normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained." *Id.* Otherwise, "allowing alien habeas petitioners to name the Attorney General … will encourage rampant forum

---

[4] At the time of the *Vasquez* decision, immigration detainees were held by the Immigration and Naturalization Service which was part of the U.S. Department of Justice.

shopping." *Id.* at 694.

Courts within this District routinely find jurisdiction wanting over habeas petitions that are filed by ICE detainees outside of Massachusetts. *See e.g. Costa v. Lyons,* No. 25-CV-11732-DJC, 2025 WL 1695940, at *1 (D. Mass. June 17, 2025) ("The Court lacks habeas jurisdiction over this action because Costa was not within the territorial jurisdiction of this Court when he filed the Petition."); *Ozturk*, 2025 WL 1009445 at *10-11 (Transferring case to Vermont "because Ozturk was confined overnight in Vermont when the Petition was filed"); *Kantengwa v. Brackett*, No. 19-CV-12566-NMG, 2020 WL 93955, at *1 (D. Mass. Jan. 7, 2020) ("Because the District of Massachusetts is not the district of [petitioner's] confinement, jurisdiction is lacking."); *Tham v. Adducci*, 319 F. Supp. 3d 574, 577 (D. Mass. 2018) ("jurisdiction lies in only one district: the district of confinement."). Because Petitioner was transferred from Massachusetts before he filed his Petition, this Court never acquired jurisdiction and therefore "out not to … act[] on the merits" of the Petition. *Vasquez*, 233 F.3d at 697.

This Petition also fails to name Petitioner Gutierrez-Ramos' immediate custodian as respondent as required. Instead, the Petition names the U.S. Department of Homeland Security and ICE as respondents to this action. Per *Padilla* and *Vasquez*, this Court lacks jurisdiction over the Petition on this basis as well.

Courts within this district routinely hold that they lack jurisdiction over a habeas petition if the alien names improper respondents such as supervisory officials like the ICE Boston Field Office Director ("FOD"), even if this individual provides oversite throughout the New England region. For example, in *Duy Tho Hy v. Gillen*, 588 F. Supp. 2d 122, 124-25 (D. Mass. 2008), the Court held that the ICE FOD was not a proper party, explaining that "[b]ecause the petitioner's *immediate* custodian is the only proper respondent, a supervisory officer of any kind, … is not a

9

proper party." (emphasis in original). *See also McPherson v. Holder*, No. 14-CV-30207-MGM, 2015 WL 12861171, at *2 (D. Mass. Mar. 4, 2015) (Explaining that "regardless of where petitioner was detained at the time of filing, under First Circuit jurisprudence, Attorney General Eric Holder does not have day-to-day control over the facility where the petitioner is held. Thus, petitioner has not named the proper respondent, and on this basis alone, the petition may be dismissed without prejudice to its refiling with the correct respondent."); *Pen v. Sessions*, No. CV 17-10626-NMG, 2017 WL 2312822, at *1–2 (D. Mass. May 25, 2017) (Holding that "the proper respondent is the warden of the institution where Pen was confined when the petition was filed. … The other persons identified as respondents are not proper parties to this action.").

The First Circuit did acknowledge, however, that there could be "extraordinary circumstances" in which an official with supervisory control could be named as the respondent for an ICE detainee's habeas petition. *Vasquez*, 233 F.3d at 696. The court cited *Demjanjuk v. Meese,* 784 F.2d 1114, 1116 (D.C. Cir. 1986) for one such possible exception where a supervisory official was appropriately named when the custodian of the petitioner was unknown at the time that the petition is filed. *Id*. The First Circuit also contemplated an exception could exist when ICE "spirited an alien from one site to another in an attempt to manipulate jurisdiction" and explained that a petitioner would need to "marshal[] facts suggesting furtiveness" or make a "showing of the elements necessary to demonstrate bad faith" for this exception to apply. *Id.*

In *Ozturk*, this Court confronted a situation in which ICE arrested a habeas petitioner and transferred her from Massachusetts within hours of the arrest, first to Vermont where she was present when her habeas petition was filed, and then the next morning to Louisiana. 2025 WL 1009445, at *8-10. The Court found an exception to the immediate custodian rule applied based

upon the "irregularity of the arrest, detention, and processing … coupled with the failure to disclose Ozturk's whereabouts even after the government was aware that she had counsel and the Petition was filed in this Court." *Id.* at *9. The Court also found that the unknown custodian exception applied because the petition was filed when Ozturk was in transit and "counsel for Ozturk could not have known to name her client's immediate custodian in Vermont, her location at the time the Petition was filed." *Id.* at *10.

Here, Petitioner cannot demonstrate that the course of events surrounding his arrest on June 9, 2025 and his transfer from Massachusetts on July 6, 2025 rise to the level of "furtiveness" or "bad faith" as contemplated by the First Circuit in *Vasquez* or as confronted by this Court in *Ozturk*. Petitioner had approximately one month to file his Petition challenging his detention with this Court after he was arrested on June 9, 2025 before his eventual transfer from Massachusetts on July 6. Plainly, he was not "spirited … from one site to another in an attempt to manipulate jurisdiction." *Vasquez*, 233 F.3d at 696. *See also Chirinos v. Hyde*, 1:25-cv-11641-AK, Doc. No. 13 (D. Mass. July 7, 2025) (Finding no exception applied to ground jurisdiction in district of Massachusetts as "Chirinos remained in custody in Massachusetts for more than a week before he was transferred, during which a habeas petition could have been filed.").

For these reasons, dismissal of this Petition is proper as it was filed in Massachusetts after Petitioner departed the district and because it inappropriately names agencies, rather than Petitioner Gutierrez-Ramos' immediate custodian as respondents to this action.

### B. Petitioner's Detention is Lawful and therefore the Petition must be Denied, not Transferred.

This Court should dismiss the Petition rather than transfer it to the Western District of Louisiana because it is wholly without merit and therefore "the interest of justice" does not

11

compel transfer. *See* 28 U.S.C. § 1404(a) ("[I]n the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

1.     **Petitioner's Detention is Authorized by Statute.**

ICE's detention authority stems from 8 U.S.C. § 1231 which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final order alien. If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner Gutierrez-Ramos' prior order of removal was final in March of 2024, he is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner Gutierrez-Ramos because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as he was neither admitted nor paroled in the United States upon entry. As such, ICE has statutory authority to detain Petitioner to effectuate his removal order from the United States and he is not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process.

The Supreme Court, in *Johnson v. Arteaga-Martinez*, answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings

after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). The Court answered that question definitively, holding that Section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" … "directs that we answer this question in the negative." *Id.* at 581.

As such, Petitioner's detention comports with statute and Supreme Court precedent and does not counsel in favor of relief.

### 2. Petitioner's Detention is Constitutional.

Petitioner's claim that his detention violates the Fifth Amendment of the Constitution is without merit as his detention comports with the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) through which a due process challenge to post-final order detention must be analyzed.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (Explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart

13

from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner's due process claim fails because any *Zadvydas* challenge cannot be raised until he has been detained for six-months in post-final order custody and Petitioner has been detained for less than one month. *See Thai v. Hyde,* 2025 WL 1655489 at *3 (D. Mass. June 11, 2025) (Petitioner who had been detained for 17 days could not demonstrate a due process challenge to post-final order detention); *Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention).

Here, there is no dispute that Petitioner is detained for the limited purpose of effecting his removal order. As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.,* No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration."). For these reasons, his Constitutional challenge to his detention fails.[5]

### C. District Courts Lacks Jurisdiction to Stay Removal Orders from the United States and in Any Event, Petitioner is Subject to a Stay of Removal.

Denial of this Petition, rather than transfer, is also appropriate because district courts are without jurisdiction to reward Petitioner's requested relief—a stay of removal while his motion to reopen is adjudicated. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

---

[5] Petitioner also seems to challenge his arrest by the U.S. Coast Guard on June 9, 2025 on the basis that it was done without a judicial warrant. Doc. No. 1 at 6. However, USCG has authority under 14 U.S.C. § 522(a) to make "inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States." No warrant is required to conduct such searches, seizures, and arrests. *See United States v. Elkins,* 774 F.2d 530, 533–34 (1st Cir. 1985) (Explaining that the Court had repeatedly found that under 14 U.S.C. § 89(a) [the predecessor statute to Section 522(a)] that the "Coast Guard may stop and board an American flag vessel on the high seas without a warrant and any particularized suspicions of wrongdoing to conduct an administrative safety and document inspection.").

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (Per Section 1252(g), "the Court simply lacks jurisdiction to grant a stay of a final order of removal."); *Lopez Lopez v. Charles,* No. 12-cv-101445-DJC, 2020 WL 419598 at *4 (D. Mass. Jan. 26, 2020) (Section 1252(g) deprives Court of challenge to ICE's decision to proceed with removal and strips Court of ability to enter stay of removal.); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018) (Explaining that "to the extent that Doe seeks to stay or prevent her removal based on the merits, this Court is without subject-matter jurisdiction to consider such a claim."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Martin v. U.S. Immigration & Customs Enf't,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006)

("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals.").

Section 1252(g) bars jurisdiction to enter a stay of removal even when an individual seeks more time to apply for different forms of immigration relief or to file a motion to reopen the underlying removal order. *See Dambrosio*, 2025 WL 1070058, at *3 (Court lacked jurisdiction "to issue a stay of the final removal order pending resolution of his visa applications."); *Compere*, 368 F. Supp. 3d at 170 (Court barred from entering stay even though petitioner had application pending); *E.L.F. v. Prim,* 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher,* No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Section 1252(g) also applies to strip courts of jurisdiction to enter stays of removal even if the petitioner is seeking a stay to pursue a motion to reopen, as in this case. As recognized by this Court, even if the challenge is framed as a violation of due process for failure to stay removal pending a motion to reopen, "this does not change the jurisdiction stripping analysis under Section 1252(g)." *Lopez Lopez*, 2020 WL 419598, at *4. *See also Compere*, 368 F. Supp. 3d at 170 (Explaining that "[w]hile a petitioner may seek to reopen removal proceedings or a stay of removal, he or she must do so through the procedure established by statute and regulation."); *Julce*, 2018 WL 1083734, at *5 (Declining to enter a stay of removal and explaining that petitioner "is free to file a motion to reopen and request an administrative stay from the BIA pending the adjudication of such a motion.").

Circuit courts around the county also routinely hold Section 1252(g) bars courts from entering stays of removal to allow motions to reopen to proceed. *See e.g., Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (Finding Section 1252(g) precludes review of a claim to enjoin the government from removing petitioner "pending resolution of his motion to reopen".); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (Explaining that ICE "may thus decide to execute [an alien's] valid removal order when [it] choses. The statute shields that prosecutorial discretion from judicial review apart from a petition for review."); *Hamama v. Adducci*, 912 F.3d 869, 874-75 (6th Cir. 2018) ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review.)

Congress did not provide authority to this Court to consider such requests, and in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioner's request for a stay of removal from this Court must be denied.

Additionally, Petitioner has received the relief he requests this Court order by operation of statute, specifically 8 U.S.C. § 1229a(b)(C)(5) which mandates an alien receive a stay of removal upon the filing of a motion to reopen challenging an *in absentia* removal order "pending disposition of the motion by the immigration judge." Therefore, this Petition is also subject to dismissal because it is moot as the relief requested has been achieved. *Jean v. Garland*, 636 F. Supp. 3d 221, 223 (D. Mass. 2022) (Action moot after "plaintiffs have been afforded all the relief they sought.").

If there was any remaining question as to the viability of this Petition, the relief sought by Petitioner—a stay of removal to remain in the United States while an application is pending—is relief that is unavailable in habeas. Petitioner does not truly challenge the legality of his detention

as ICE has statutory and constitutional authority to detain individuals with final orders of removal to effectuate such orders. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

But instead of simple release, Petitioner seeks a full stop to removal. This is not the type of relief that the Supreme Court found to be available as relief in a habeas petition. *Id.* at 117-18 (holding that the relief sought, which did not include release, fell "outside the scope of the common-law habeas writ"). In *Thuraissigiam*, the petitioner did not seek "simple release," instead he sought, as this Petitioner does as well, "the opportunity to remain lawfully in the United States." *Id.* at 119. The Supreme Court explained that the habeas petition was improperly brought because if he he had sought proper habeas relief, it would take the form of release "in the cabin of a plane bound for [the designated country]." *Id.* at 119. Other circuits have followed this principle. *See Tazu*, 975 F.3d at 297-99 ("And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for Bangladesh.'") (brackets omitted); *E.F.L.*, 986 F.3d at 965-66 (holding that a petitioner could not invoke an alleged Suspension violation when a petition does not contest the lawfulness of restraint or seek release from custody); *Rauda*, 55 F.4th at 780 (same as *E.F.L.*).

For all of these reasons, this Court lacks jurisdiction under Section 1252(g) to enter an order staying or blocking ICE's effectuation of Petitioner's removal order.

## CONCLUSION

This Court lacks jurisdiction over this Petition because Petitioner was not in the district when it was filed. This Court should deny, rather than transfer, the Petition because courts lack

the authority to award the relief requested in the Petition and Petitioner's assertion of unlawful detention in violation of statute, regulation, and the Constitution fails.

|  |  |  |
|---|---|---|
|  |  | LEAH B. FOLEY<br>United States Attorney |
| Dated: July 9, 2025 | By: | */s/ Mark Sauter*<br>Mark Sauter<br>Assistant United States Attorney<br>United States Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>Tel.: 617-748-3347<br>Email: mark.sauter@usdoj.gov |

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

| Dated: July 9, 2025 | By: | */s/ Mark Sauter*<br>Mark Sauter<br>Assistant United States Attorney |
|---|---|---|